01
02
03
04
05
06
07                    UNITED STATES DISTRICT COURT
                     WESTERN DISTRICT OF WASHINGTON
08                            AT SEATTLE

09  SAIDAH COAXUM,                    )
                                      )   CASE NO. C10-1815-MAT
10          Plaintiff,                )
                                      )
11      v.                            )   ORDER RE: PENDING MOTIONS
                                      )   FOR SUMMARY JUDGMENT
12  STATE OF WASHINGTON, et al.,      )
                                      )
13          Defendants.               )
    _____ )
14

15                            <u>INTRODUCTION</u>

16          Plaintiff Saidah Coaxum proceeds with counsel in this 42 U.S.C. § 1983 civil rights

17  case.  She names the State of Washington, the Washington Office of Administrative Hearings

18  (OAH), and state employees Anna Marie Thebo, Joel Roalkvam, and Bea Munoz as

19  defendants.   Plaintiff alleges violation of her federal and state constitutional rights in relation

20  to the suspension and revocation of her in-home daycare license and a finding of child abuse.

21  (Dkt. 36.)

22

01   Defendants move for dismissal of plaintiff's claims on summary judgment (Dkt. 41)

02 and plaintiff moves for partial summary judgment, with a request for oral argument (Dkt. 46).

03 Having considered the pending motions and all materials filed in support and in opposition, as

04 well as the remainder of the record, the Court finds oral argument unnecessary and defendants

05 entitled to dismissal of plaintiff's claims on summary judgment.[1]

06          <u>BACKGROUND</u>

07   Washington State's Department of Early Learning (DEL) licensed plaintiff Saidah

08 Coaxum to operate an in-home daycare beginning in 1999.   (Dkt. 25-1 (DEL Review Decision

09 and Final Order) at 20.)   The facts relevant to this case involve daycare provided by plaintiff to

10 a child – "P" – on April 9 and April 10, 2008.   (*Id.* at 21.)

11   P's mother, Erika Rivera-Flores, noticed bruises on P's inner thighs while changing her

12 diaper in the afternoon of April 10, 2008.   (*Id.*)   P's father, Paulino Carmona, came to

13 Rivera-Flores's house and took pictures of the bruises.   (*Id.*)   P also had an older bruise on her

14 left knee, reported to have resulted from her collision with a piece of household furniture while

15 playing.   (*Id.*; Dkt. 54-1 at 37-38.)

16   Rivera-Flores and Carmona returned with P to plaintiff's daycare in the evening of

17

18   1 Defendants also move to dismiss plaintiff's motion and strike her response to their motion based on plaintiff's failure to include citations to the record.   Plaintiff's briefing (*see* Dkts. 46 & 50) is insufficiently supported.   *See* Local Civil Rule 10(e)(6) ("[T]he parties shall, insofar as possible, cite

19 the page and line of any part of the transcript or record to which their pleadings, motions or other filings refer.") and Fed. R. Civ. P. 56(c)(1)(A) (requiring citation to particular parts of materials in the record).

20 However, the Court declines to dismiss plaintiff's motion or strike her response on this basis.   Instead, the deficiency of the briefing affects the Court's consideration of the pending motions.   *See*, *e.g.*,

21 *Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001) ("The district court need not examine the entire file for evidence establishing a genuine issue of fact, where the evidence is not set

22 forth in the opposing papers with adequate references so that it could conveniently be found.")

ORDER RE: PENDING MOTIONS
FOR SUMMARY JUDGMENT
PAGE -2

01 April 10, 2008. (Dkt. 25-1 at 21.) Plaintiff denied the bruises were sustained at her daycare.

02 (*Id.*) After the parents left, plaintiff called her DEL licensor, defendant Thebo, and left a

03 message asking for a return call. (Dkt. 42-5 (Ex. E, Coaxum Dep.) at 8.) Plaintiff and/or her

04 mother also called P's parents three times that evening. (Dkt. 25-1 at 22.) The parties agree

05 that plaintiff and/or her mother communicated that P should not return to the daycare on the

06 following day. (*Id.*; *accord* Dkt. 46 at 4.) Also, plaintiff conceded she told Carmona to make

07 sure he knew what he was doing as reporting to Child Protective Services (CPS) "causes

08 trouble." (Dkt. 42-5 at 9-10.)

09 A friend of Rivera-Flores made a referral to CPS on April 11, 2008. (Dkt. 43-1 (Ex.

10 A).) On that same day, Rivera-Flores and Carmona took P to Swedish Hospital. (Dkt. 25-1 at

11 22.) Swedish Hospital made a referral to CPS, reporting the bruising as black and blue and

12 appearing to have been sustained within the previous forty eight hours. (Dkt. 43-3 (Ex. C) at

13 2.) The examining physician, Dr. Sakata, recommended P not be taken back to plaintiff's

14 daycare. (*Id.* at 3.)

15 The CPS referral on P was referred to the Department of Social and Health Services'

16 (DSHS) Division of License Resources/Child Protective Services (DLR/CPS) for investigation.

17 (Dkt. 43, ¶3.) DLR/CPS faxed the referral to the Seattle Police Department (SPD) for

18 investigation of child abuse, assigned defendant Munoz as the DLR/CPS investigator, and

19 notified DEL a referral of abuse and neglect had been screened in for investigation. (*Id.*, ¶¶3,

20 7). DEL initiated its own investigation, staffed by Thebo and her supervisor, defendant

21 Roalkvam. (Dkt. 44, ¶¶ 2-3, 7-8; Dkt. 45, ¶¶ 3, 5.)

22

01        The DLR/CPS investigation began with Munoz interviewing Rivera-Flores and

02  Carmona on April 14, 2008.  (Dkt. 43, ¶¶4, 7-9.)  Munoz observed P's bruising, Dr. Sakata's

03  discharge summary, and the cell phone showing the three calls received from plaintiff, and

04  obtained the medical records from Swedish Hospital.  (*Id*., ¶¶7-10.)  Munoz informed

05  plaintiff she would be contacted at a later date.  (*Id*.)  Pursuant to DSHS policy and protocols,

06  Munoz was not to interview Coaxum given the law enforcement referral.  (*Id*.)  Munoz

07  proceeded to provide P's medical records, records regarding plaintiff's CPS history, and the

08  photographs taken by P's parents to Dr. Naomi Sugar, a consulting physician board certified in

09  child abuse pediatrics.  (*Id*., ¶11.)  Dr. Sugar, in a May 5, 2008 letter, opined that P's bruises

10  were "highly concerning for inappropriate force used in positioning and holding a child for a

11  diaper change."  (*Id*., ¶11 and Ex. B.)

12        The DEL investigation began on April 14, 2008 with Thebo personally serving plaintiff

13  at her home with a summary suspension letter.  (Dkt. 44, ¶8 and Exs. A & B.)  The letter

14  described the facts leading up to DEL's decision as including the existence of "an active

15  DLR/CPS investigation alleging Negligent Treatment or Maltreatment, or Physical Abuse of a

16  child or children" in plaintiff's care, and described the referral – "(# 1902114)" – as alleging "a

17  child sustained an unexplained injury while in [plaintiff's] care and that [plaintiff] attempted to

18  convince the parent not to report the injury to the licensor."  (*Id*., Ex. A.)[2]  Thebo and

19  Roalkvam attest that, at that time, it was standard practice in the Seattle DEL office to issue a

20  summary suspension when an investigation of child abuse and neglect was screened in for

21  ———————————

22      2 Thebo subsequently issued an amended summary suspension letter dated April 15, 2008 and changing the prior reference to "Child Care Centers" to "Family Child Care Homes[.]"  (Dkt. 44, Exs. A & D.)

01 investigation by DLR/CPS.  (*Id.*, ¶7 and Dkt. 45, ¶3.)

02     Thebo asked to come in and plaintiff let Thebo into her home.  (Dkt. 44, ¶9 and Dkt.

03 42-5 at 11, 14-15.)   In addition to serving the summary suspension letter, Thebo asked plaintiff

04 to start calling the parents of the children in the daycare and gathering information from the

05 children's files.  (Dkt. 44, Ex. B.)  Thebo attests that she observed plaintiff filling out a

06 Childcare Injury/Incident report form, which plaintiff backdated to April 10, 2008.  (*Id.*, ¶10

07 and Ex. C.)   Thebo left once all of the children in the home had left.  (*Id.*, Ex. C.)   Plaintiff

08 did not see Thebo take anything from her home or notice anything missing after Thebo left.

09 (Dkt. 42-5 at 11.)

10     Plaintiff sought a stay of the summary suspension of her daycare license and ALJ

11 Desiree Hosannah held a hearing on May 20 and May 27, 2008.  (Dkt. 25-1 at 24.)   Witnesses

12 at the hearing included plaintiff, her mother, Aileen Ellis, Flores-Rivera, Carmona, Thebo, and

13 Munoz.  (Dkt. 42, Ex. B.)  ALJ Hosannah, in a June 27, 2008 decision, denied plaintiff's

14 request for a stay, finding plaintiff's actions "troubling and of great cause for concern[]" and, if

15 proven, to warrant the summary suspension of her license.  (*Id.* at 2-3.)   The ALJ also found

16 plaintiff's "refusal to properly cooperate and document the events" at issue to present

17 "sufficient concern for the children's safety and welfare[]" and the facts supporting a

18 determination that plaintiff "attempted to coerce the alleged victim's parents to not report their

19 child's injuries."  (*Id.* at 3.)

20     On August 29, 2008, DEL revoked plaintiff's license.  (Dkt. 43, ¶13; Dkt. 44, ¶5 and

21 Ex. A.)   The letter explaining the basis for the decision noted, *inter alia*, plaintiff's failure to

22

properly report P's injuries, the report that she had attempted to persuade and coerce the parents into not reporting the injury, a conclusion that plaintiff gave false testimony at the hearing in stating that she wrote the incident report on April 10, 2008, and plaintiff's recent DEL history. (Dkt. 44, Ex. A.)

On October 4, 2008, Munoz received notice that the SPD had concluded its investigation and found insufficient evidence to proceed with criminal charges against plaintiff. (Dkt. 44, ¶14.) The police report stated: "Because of the conflicting statements given by the child's parents as well as by the caregiver[] I cannot determine whom, if anyone caused them." (Dkt. 19-1 at 19.)[3] After receiving the police report, Munoz attempted to contact plaintiff by letter and telephone. (Dkt. 43, ¶15.) Plaintiff likewise attempted to speak with Munoz. (*Id*.) Despite the multiple attempts, Munoz and plaintiff did not meet to discuss the investigation. (*See id*., ¶¶15-16 and Ex. B at 5-6.)

On January 28, 2009, Munoz concluded her investigation with a founded finding of child abuse. (*Id*., ¶17 and Ex. B.) She noted, *inter alia*, plaintiff's failure to document and report the injuries, the report that plaintiff had pleaded with P's parents not to report the bruising, Dr. Sugar's report, an absence of evidence to suggest P's parents caused the bruising, the parent's report that P had expressed fear of going to plaintiff's daycare, and prior reports

---

3 The SPD report also stated: "Further complicating this issue is Dr. Sugars [sic] letter indicating that while the injuries are suspicious, accidental causes cannot be ruled out." (Dkt. 19-1 at 19.) However, as noted in the later DEL and CPS Final Orders, the SPD detective appeared to have misread Dr. Sugar's letter. (Dkt. 24-1 (CPS Review Decision and Final Order) at 23-24 and Dkt. 25-1 at 23-24.) Dr. Sugar's letter, in an appendix portion, referenced two prior reports made in regard to plaintiff's daycare, the latter of which resulted in a conclusion that a child's fractured finger was likely to have been accidental. (Dkt. 43, Ex. B at 2.) As stated above, Dr. Sugar found P's bruising "highly concerning for inappropriate force[.]" (*Id*.)

01 regarding plaintiff. (*Id.*, ¶17 and Ex. B at 6-8.) Munoz notified plaintiff by letter as to the

02 decision. (*Id.*, Ex. D.) An internal review, conducted at plaintiff's request, affirmed the

03 founded conclusion, as explained in a letter dated April 3, 2009. (*Id.*, Ex. E.)

04       On June 24, 2009, DEL issued an amended revocation letter. (Dkt. 45, Ex. B.) The

05 letter added the founded child abuse finding by DLR/CPS as a basis for the license revocation.

06 (*Id.* (citing Wash. Admin. Code § 170-296-0450(2)(b) ("We must deny, suspend or revoke your

07 license if you: . . . Have been found to have committed . . . child abuse, child neglect or

08 exploitation[.]"))

09       ALJ Hosannah continued the previously scheduled summary suspension hearing so that

10 it could be heard at the same time as the revocation hearing. (*See* Dkt. 25-1 at 44.) ALJ

11 Hosannah thereafter left OAH and OAH reassigned the matter to ALJ Kingsley. (*Id.*)

12 Believing the August 2008 revocation letter had been properly served on plaintiff, DEL moved

13 to dismiss the matter for plaintiff's failure to respond. (*Id.*) ALJ Kingsley denied the motion

14 and, on July 12, 2009, plaintiff was personally served with both the June 2009 amended

15 revocation letter and the April 2009 letter affirming the founded abuse finding. (*Id.* at 26, 44.)

16       Plaintiff timely appealed both findings and OAH consolidated all three matters – the

17 license suspension, license revocation, and finding of abuse – for hearing. (*Id.* at 1.) OAH

18 reassigned the matters to ALJ Futch after ALJ Kingsley left OAH. (*Id.* at 44.) At an August

19 26, 2009 prehearing conference, ALJ Futch made evidentiary rulings and scheduled the matters

20 for hearing for three days in January 2010. (*Id.* at 1, 44-45.) At hearing, plaintiff chose not to

21 present witnesses, deciding to rely on the record created at the stay hearing. (Dkt. 42, Ex. C

22

01  (transcript of plaintiff's testimony explaining her decision).)  After the hearing, in May 2010,

02  the matters were reassigned to ALJ Pesik due to ALJ Futch's unavailability.  (Dkt. 25-1 at 45.)

03       ALJ Pesik listened to the recordings of the May 2008 stay hearing and the January 2010

04  hearing conducted by ALJ Futch, and reviewed all relevant materials and exhibits.  (Dkt. 17-1

05  at 2-3.)  On December 30, 2010, ALJ Pesik issued his initial decisions and orders, upholding

06  the summary suspension, license revocation, and founding finding of abuse.  (Dkt. 17-1, Exs.

07  A & B.)  With respect to the abuse, ALJ Pesik's findings included that plaintiff told P's parents

08  reporting the bruising would "make a lot of trouble for everyone, themselves included[,]"

09  which the parents understood "to be a threat or intimidation."; that Dr. Sugar concluded the

10  bruises were most likely the result of a forceful diaper change and that, since the bruising had

11  lasted at least two days, the injury was "'significant'" and indicative of inappropriate force; that

12  there was no reason to believe P's parents had caused the bruising and it was "more likely than

13  not" plaintiff caused the bruising since it was not observed by P's mother until the afternoon of

14  April 10th and plaintiff testified to being the only person who changed P's diaper.  (Dkt. 17-1

15  at 6.)

16       With regard to the license suspension, ALJ Pesik found that plaintiff's initial response

17  to P's parent's concerns "reflects a troubling lack of regard for the factual issues surrounding"

18  P's injuries "and a clearly greater concern with protecting" plaintiff's "business interests."  (*Id.*

19  at 18.)  ALJ Pesik added:  "This lack of primary concern for the welfare of the child is

20  sufficient to cause concern that the continued operation of the daycare facility would present a

21  threat to the public health, safety and welfare."  (*Id.*)  With regard to the license revocation,

22

01  ALJ Pesik found the witness testimony contrary to plaintiff's testimony "more credible[,]" and

02  noted, *inter alia*, plaintiff's failure to report the injury, her attempt to persuade the parents to not

03  report the injury, the fact that plaintiff backdated the injury report and falsely testified regarding

04  that fact at the May 2008 hearing, while testifying at the January 2010 hearing that she had not

05  reported the bruising because she thought the bruises were old, and plaintiff's past licensing

06  violations.  (*Id*. at 19-21.)

07      Plaintiff timely appealed all findings to both the DEL Review Judge and the DSHS

08  Board of Appeals.  All three matters were consolidated and heard by Review Judge Marjorie

09  Gray.  (*See* Dkt. 24-1 at 1.)  Plaintiff, in addition to challenging the findings, alleged violation

10  of her due process rights, biased decision makers, and the use of the incorrect standard of proof.

11  (Dkt. 25-1 at 2-10.)  Review Judge Gray issued Review Decisions and Final Orders in the CPS

12  and DEL matters on April 21, 2011 and May 19, 2011 respectively.  (Dkts. 24-1 and 25-1.)

13  The decisions upheld ALJ Pesik's findings of fact and conclusions of law, found testimony

14  offered by plaintiff not credible (and in some respects "untruthful and unethical" (Dkt. 25-1 at

15  28, 41)), and found plaintiff's claim of bias and/or lack of fairness not substantiated.  (Dkts.

16  24-1 and 25-1.)[4]  The Review Judge deferred the issue of the proper standard of proof for

17  judicial review.  (Dkt. 24-1 at 28-30 and Dkt. 25-1 at 31-35.)

18      The final orders advised plaintiff of her right to appeal in Washington State Superior

19  Court.  (Dkt. 24-1 at 41 and Dkt. 25-1 at 49.)  She did not appeal and, instead, proceeded with

20  the current case, which had been stayed pending resolution of the state proceedings.

21      4 Review Judge Gray did disagree with ALJ Pesik in one respect, finding insufficient evidence to support
an allegation that plaintiff attempted to persuade a non-English speaking parent (not Rivera-Flores) to avoid taking

22  her child to a doctor to avoid a possible CPS referral.  (Dkt. 25-1 at 30.)

<u>DISCUSSION</u>

02          Summary judgment is appropriate when a "movant shows that there is no genuine

03   dispute as to any material fact and the movant is entitled to judgment as a matter of law."   Fed.

04   R. Civ. P. 56(a).   The moving party is entitled to judgment as a matter of law when the

05   nonmoving party fails to make a sufficient showing on an essential element of his case with

06   respect to which he has the burden of proof.   *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23

07   (1986).   The Court must draw all reasonable inferences in favor of the nonmoving party.

08   *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

09          The central issue is "whether the evidence presents a sufficient disagreement to require

10   submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."

11   *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).   The moving party bears the

12   initial burden of showing the district court "that there is an absence of evidence to support the

13   nonmoving party's case."   *Celotex Corp.*, 477 U.S. at 325.   The moving party can carry its

14   initial burden by producing affirmative evidence that negates an essential element of the

15   nonmovant's case, or by establishing that the nonmovant lacks the quantum of evidence needed

16   to satisfy its burden of persuasion at trial.   *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos.,*

17   *Inc*., 210 F.3d 1099, 1102 (9th Cir. 2000).   The burden then shifts to the nonmoving party to

18   establish a genuine issue of material fact.   *Matsushita Elec. Indus. Co.*, 475 U.S. at 585-87.

19          In supporting a factual position, a party must "cit[e] to particular parts of materials in

20   the record . . .; or show[] that the materials cited do not establish the absence or presence of a

21   genuine dispute, or that an adverse party cannot produce admissible evidence to support the

22

fact." Fed. R. Civ. P. 56(c)(1). The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.*, 475 U.S. at 585. "[T]he requirement is that there be no *genuine* issue of material fact. . . . Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 247-48 (emphasis in original). "The mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient[]" to defeat summary judgment. *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995). Nor can the nonmoving party "defeat summary judgment with allegations in the complaint, or with unsupported conjecture or conclusory statements." *Hernandez v. Spacelabs Med. Inc*., 343 F.3d 1107, 1112 (9th Cir. 2003).

For the reasons discussed below, the Court finds no basis for granting plaintiff's motion and finds defendants entitled to dismissal of plaintiff's claims.

A.    <u>Eleventh Amendment Immunity</u>

"The Eleventh Amendment prohibits federal courts from hearing suits brought against an unconsenting state." *Brooks v. Sulphur Springs Valley Elec. Coop*., 951 F.2d 1050, 1053 (9th Cir. 1991) (cited sources omitted). *See also Blatchford v. Native Village of Noatak*, 501 U.S. 775, 779-82 (1991). This jurisdictional bar extends to state agencies and departments, and applies whether legal or equitable relief is sought. *Brooks*, 951 F.2d at 1053 (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984)). It is well established that § 1983 did not abrogate state immunity, and that Washington State has not waived its

01    Eleventh Amendment immunity from suit. *Manning v. Washington*, 463 F. Supp. 2d 1229,

02    1244 (W.D. Wash. 2006) (citing *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 66, 70-71

03    (1989) (states are not "persons" amenable to suit under § 1983; the limitation extends to

04    "governmental entities that are considered 'arms of the state'[.]"))  Accordingly, as argued by

05    defendants, plaintiff's claims against the State of Washington and OAH are barred by the

06    Eleventh Amendment.[5]

07       Plaintiff relies on inapposite case law in arguing the waiver of Eleventh Amendment

08    immunity.  As the Ninth Circuit noted in *California ex rel. Lockyer v. Dynegy, Inc*., 375 F.3d

09    831 (9th Cir. 2004), Eleventh Amendment immunity "limits the reach of federal judicial power

10    to suits 'commenced or prosecuted *against* one of the United States.'"  *Id*. at 844 (quoting U.S.

11    Const. amend. XI) (emphasis added).  Therefore, while reaffirming the clear protection of

12    Eleventh Amendment immunity where states are "haled into federal courts *as defendants*[,]"

13    the Ninth Circuit did not find the Eleventh Amendment implicated by a removal to federal court

14    where a State was the *plaintiff* in the suit.  *Id*. at 843-46 (a "state that voluntarily brings suit as

15    a plaintiff in state court cannot invoke the Eleventh Amendment when the defendant seeks

16    removal to a federal court of competent jurisdiction.")  The State defendants did not initiate

17    this suit, and there is no support for the conclusion that, through the initiation of state

18    administrative proceedings against plaintiff, the State of Washington and OAH acted to waive

19       5 The Eleventh Amendment also bars actions for damages against state officials acting in their official capacities, while an exception exists for suits against state officials seeking prospective

20 injunctive relief.  *Doe v. Lawrence Livermore Nat'l Lab*., 131 F.3d 836, 839 (9th Cir. 1997) (citing *Will*, 491 U.S. at 70).  Because plaintiff seeks damages, there is a strong presumption she intends a

21 personal capacity suit against the individual defendants.  *See generally Romano v. Bible*, 169 F.3d 1182, 1186 (9th Cir. 1999).  In any event, defendants here move for dismissal based on the Eleventh

22 Amendment only in relation to the State of Washington and OAH.

ORDER RE: PENDING MOTIONS
FOR SUMMARY JUDGMENT
PAGE -12

01 their Eleventh Amendment immunity. *Cf. id*. at 848 ("While California's hope was to avoid

02 the federal forum, it voluntarily appeared in state court to press its claims against the

03 companies, who predictably sought removal to what they perceived to be a more favorable

04 forum for the adjudication of claims involving federal law.")

05       Plaintiff sets forth an independent claim for relief under federal law, which is barred by

06 the Eleventh Amendment immunity of the State of Washington and OAH. As such, plaintiff's

07 claims against these defendants must be dismissed and are not further addressed in this Order.

08 B.    <u>Res Judicata and Collateral Estoppel</u>

09       Defendants argue plaintiff should be prohibited from relitigating decisions made by

10 OAH and the DSHS Board of Appeals in the underlying state action. They maintain res

11 judicata bars relitigation of both those claims decided below and claims that could have been

12 decided by the State courts, and that collateral estoppel precludes relitigation of certain issues.

13       Plaintiff, in response, argues only that preclusion does not apply to the constitutional

14 issues raised in this case because the OAH, DEL, and DSHS lacked jurisdiction to decide

15 constitutional issues. *See, e.g.*, *Amunrud v. Bd. Of Appeals*, 124 Wn. App. 884, 892, 103 P.3d

16 257 (2004) ("[A]lthough we recognize that Amunrud could not present his constitutional

17 arguments in the administrative hearing, he has been able to appeal the administrative decision

18 to the courts.") (*See also* Dkt. 24-1 at 29-30 (Review Judge recognized lack of authority to

19 decide constitutional issues).) However, this argument lacks merit.

20       A federal action is governed by preclusion law. *Exxon Mobil Corp. v. Saudi Basic*

21 *Indus. Corp.*, 544 U.S. 280, 293 (2005). Pursuant to the Full Faith and Credit Act, 28 U.S.C. §

22

01  1738, a federal court must "'give the same preclusive effect to a state-court judgment as another

02  court of that State would give.'"  *Id.* (quoting *Parsons Steel, Inc. v. First Alabama Bank*, 474

03  U.S. 518, 523 (1986)).  "'This statute has long been understood to encompass the doctrines of

04  res judicata, or claim preclusion, and collateral estoppel, or issue preclusion.'"  *Gupta v. Thai*

05  *Airways Int'l, LTD*, 487 F.3d 759, 765 (9th Cir. 2007) (quoting *San Remo Hotel, L.P. v. City*

06  *and County of San Francisco, Cal.*, 545 U.S. 323, 336 (2005)).

07      With claim preclusion, successive litigation of a claim is foreclosed by a final judgment,

08  whether or not the same issues are raised in the attempted relitigation.  *Taylor v. Sturgell*, 553

09  U.S. 880, 892 (2008) (quoting *New Hampshire v. Maine*, 532 U.S. 742, 748 (2001)).  "Issue

10  preclusion, in contrast, bars 'successive litigation of an issue of fact or law actually litigated and

11  resolved in a valid court determination essential to the prior judgment,' even if the issue recurs

12  in the context of a different claim."  *Id.* (quoting *New Hampshire*, 532 U.S. at 748-49).  In

13  precluding relitigation of matters a party has had a full and fair opportunity to litigate, the

14  preclusion doctrines "protect against 'the expense and vexation attending multiple lawsuits,

15  conserv[e] judicial resources, and foste[r] reliance on judicial action by minimizing the

16  possibility of inconsistent decisions.'"  *Id.* (quoting *Montana v. United States*, 440 U.S. 147,

17  153-54 (1979)).  The Court looks to the rules of the State in considering preclusion.  *Gupta*,

18  487 F.3d at 765 (citing *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984);

19  *Allen v. McCurry*, 449 U.S. 90, 96 (1980)).

20      It is well settled, as a matter of federal common law, that a state administrative decision

21  can have preclusive effect on a § 1983 claim.  *Wehrli v. County of Orange*, 175 F.3d 692, 694

22

ORDER RE: PENDING MOTIONS
FOR SUMMARY JUDGMENT
PAGE -14

01 (9th Cir. 1999). That is, "[w]hen a state agency acts in a judicial capacity to resolve disputed

02 issues of fact and law properly before it, and when the parties have had an adequate opportunity

03 to litigate those issues, federal courts must give the state agency's fact-finding and legal

04 determinations the same preclusive effect to which it would be entitled in that state's courts."

05 *Olson v. Morris*, 188 F.3d 1083, 1086 (9th Cir. 1999) (cited cases omitted). The Court looks to

06 the adequacy of the state's administrative forum in making this assessment:

> The threshold inquiry . . . is whether the state administrative proceeding was conducted with sufficient safeguards to be equated with a state court judgment. This requires careful review of the administrative record to ensure that, at a minimum, it meets the state's own criteria necessary to require a court of that state to give preclusive effect to the state agency's decisions . . . Although a federal court should ordinarily give preclusive effect when the state court would do so, there may be occasions where a state court would give preclusive effect to an administrative decision that failed to meet the minimum criteria set down in *Utah Construction*.

12 *Olson*, 188 F.3d at 1086 (quoting *Miller v. County of Santa Cruz*, 39 F.3d 1030, 1033 (9th Cir.

13 1994) (discussing *United States v. Utah Construction & Mining Co.*, 384 U.S. 394 (1966))).

14 It is also clear that, "[i]f an adequate opportunity for review is available, a losing party

15 cannot obstruct the preclusive use of the state administrative decision simply by foregoing her

16 right to appeal." *Plaine v. McCabe*, 797 F.2d 713, 718 (9th Cir. 1986). Courts have,

17 accordingly, found that a party's failure to pursue review of constitutional claims in state court

18 did not defeat preclusion. *See*, *e.g.*, *Olson*, 188 F.3d at 1086-87 (res judicata barred litigation

19 of constitutional claims that could have been raised in administrative hearing or in state court);

20 *Misischia v. Pirie*, 60 F.3d 626, 628-30 (9th Cir. 1995) (where party did not pursue available

21 state court appeal, state administrative body's decision "became final and operated with

22

01 preclusive effect[,]" precluding litigation as to procedural irregularities in administrative

02 process); *Miller*, 39 F.3d at 1032-35 (unreviewed findings of administrative tribunal precluded

03 further litigation of § 1983 claims).

04         Washington courts recognize that decisions of administrative tribunals may be afforded

05 preclusive effect. *Reninger v. Dep't of Corrections*, 134 Wn.2d 437, 449, 951 P.2d 782

06 (1998). As under federal common law, the administrative agency must act in a judicial

07 capacity, resolving disputed issues of fact properly before the agency and providing the parties

08 an adequate opportunity to litigate. *Id.*; *Stevedoring Services v. Eggert*, 129 Wn.2d 17, 40, 914

09 P.2d 737 (1996); *State v. Dupard*, 93 Wn.2d 268, 274, 609 P.2d 961 (1980). Considerations in

10 applying preclusion in an administrative setting include (1) whether the agency acting within its

11 competence made a factual decision; (2) agency and court procedural differences; and (3)

12 policy considerations. *Reninger*, 134 Wn.2d at 450; *Stevedoring Services*, 129 Wn.2d at 40.

13 Washington law also recognizes that preclusion bars claims that could have been pursued

14 beyond the administrative setting by appealing to Washington State courts. *See Shoemaker v.*

15 *Bremerton*, 109 Wn.2d 504, 509-11, 745 P.2d 858 (1987) ("Other procedural safeguards were

16 provided in the . . . right of Shoemaker to move for reconsideration and to appeal the

17 Commission's decision to superior court, even though he chose not to pursue the latter remedy

18 in favor of suing in federal district court on a federal claim.") *See also In re Marriage of*

19 *Dicus*, 110 Wn. App. 347, 355-56, 40 P.3d 1185 (2002) ("[R]es judicata applies, except in

20 special cases, not only to points upon which the court was actually required by the parties to

21 form an opinion and pronounce a judgment, but to every point which properly belonged to the

22

subject of the litigation, and which the parties, exercising reasonable diligence, might have brought forward at that time.") (quoting *Kelly-Hansen v. Kelly-Hansen*, 87 Wn. App. 320, 329, 941 P.2d 1108 (1997)).

In this case, the administrative bodies were acting within their competence in rendering final decisions as to child abuse and DEL licensing. *See* RCW § 26.44.100 and § 26.44.125 (abuse of children); RCW § 43.215.305 (DEL licensing); and RCW § 34.05.464 (adjudicative proceedings under Administrative Procedure Act). While they lacked the authority to address constitutional issues, plaintiff had the opportunity to present those issues in state court.[6]

The Court has not been given access to the full administrative record in this case. However, a review of the records provided, including the final CPS and DEL decisions (Dkts. 24-1 and 25-1), supports the conclusion that the state administrative bodies acted in a judicial capacity to resolve disputed issues of fact and law, and provided the parties adequate opportunity to litigate the issues. As recently described by the Washington Supreme Court in relation to administrative proceedings for DEL licensing cases:

> Adjudicative proceedings . . . exist that afford significant procedural safeguards to a home child care provider. At an administrative hearing, a home child care provider benefits from an unbiased tribunal, notice of the proposed action and the grounds asserted for it, an opportunity to present reasons why the proposed action should not be taken, the right to call witnesses, the right to know the

---

[6] As argued by defendants, plaintiff relies on inapposite case law in support of her position. For example, in *Amunrud*, 124 Wn. App. at 892, the Washington Court of Appeals merely recognized that, while a party was not able to present his constitutional arguments in an administrative hearing, he was able to pursue an appeal of that decision and pursue those arguments in state court. *See also Grader v. Lynnwood*, 45 Wn. App. 876, 879, 728 P.2d 1057 (1986) (recognizing constitutional issues could not be addressed in administrative hearing) and *Yakima County Clean Air Auth. v. Glascam Builders, Inc.*, 85 Wn. 2d 255, 257, 534 P.2d 33 (1975) (administrative tribunal without authority to determine issue of constitutionality and, therefore, no administrative remedy to exhaust); *Prisk v. Poulsbo*, 46 Wn. App. 793, 798, 732 P.2d 1013 (1987) (same).

01      evidence against her, the right to have a decision based only on the evidence
        presented, the right to counsel, the making of a record of the proceedings, public
02      attendance of the proceedings, and judicial review of the proceedings.

03 *Hardee v. Dep't of Soc. & Health Servs.*, 172 Wn.2d 1, 11, 256 P.3d 339 (2011).

04      Plaintiff was here provided with, at a minimum, notice, the right to representation, the

05 right to conduct discovery, the right to present evidence and witnesses, opportunities to

06 cross-examine witnesses, the provision of final decisions rendering findings of fact and

07 conclusions of law, and the right to judicial review.  (*See* Dkts. 24-1 and 25-1.)  It appears,

08 therefore, that the State provided plaintiff with process sufficient to afford the resulting

09 decisions preclusive effect.  *See*, *e.g.*, *Kremer v. Chem. Constr. Corp.*, 456 U.S. 461, 483-85

10 (1982) (finding process constitutionally sufficient where plaintiff had opportunity to present

11 evidence, witnesses, and his own testimony, had the opportunity to rebut evidence, could have

12 an attorney's assistance and to ask for subpoenas, and could seek judicial review); *Reninger*,

13 134 Wn.2d at 451 (procedures deemed adequate included representation by counsel who gave

14 opening and closing arguments, examining and cross examining witnesses, discovery, and

15 depositions under oath); *Shoemaker*, 109 Wn.2d at 509-11 (procedures deemed sufficient

16 included adequate notice, calling and cross-examining witnesses, documentary evidence,

17 opening and closing statements, hearing memoranda, final findings of fact and conclusions of

18 law, and the right to pursue judicial review).

19      As observed by defendants, the absence of formal rules of evidence in the

20 administrative proceedings does not abrogate preclusion.  *Shoemaker*, 109 Wn.2d at 511 ("To

21 hold that [the absence of formal rules of evidence] deprives the decision here of preclusive

22

01 effect would, in effect, be to completely abolish administrative collateral estoppel. In light of

02 the other, sufficient procedural formalities observed, we see no reason to do so.")   Also,

03 plaintiff's failure to avail herself of her right to appeal to state court, including pursuing

04 constitutional or other claims within such review, *see* RCW § 34.05.570(3)(a) (providing for

05 judicial relief if the agency order "is in violation of constitutional provisions on its face or as

06 applied[]"), and *Hardee*, 172 Wn.2d at 7 (court review of whether agency order or supporting

07 statute violates constitution is question of law reviewed de novo), does not rob the state

08 administrative decisions of their preclusive effect.   *See*, *e.g.*, *Plaine*, 797 F.2d at 719 n.12;

09 *Shoemaker*, 109 Wn.2d at 509-11.

10        Lastly, policy considerations militate in favor of preclusion, including efficiency and

11 affording respect to the integrity of the administrative process.   The Court finds no basis for

12 concluding that preclusion would work an "injustice[,]" *Malland v. Dep't of Ret. Sys.*, 103

13 Wn.2d 484, 489, 694 P.2d 16 (1985), or in some respect contravene public policy, *cf. Dupard*,

14 93 Wn.2d at 276 ( "[p]ractical public policy" required that parole revocation hearing decision

15 could not be basis for collateral estoppel in the prosecution of new criminal charges).

16        In sum, it appears that the state administrative proceedings suffice as a foundation for

17 preclusion.   The Court, therefore, addresses whether claims and issues in this dispute are

18 barred by res judicata and collateral estoppel.

19        In Washington, res judicata applies with a common identity of four elements: (1) subject

20 matter; (2) cause of action; (3) persons and parties; and (4) quality of the persons for or against

21 whom the claim is made.   *Schoeman v. New York Life Ins. Co.*, 106 Wash. 2d 855, 859, 726

22

P.2d 1 (1986).  Here, defendants assert a concurrence of identity in all four elements, including:  (1) common subject matter in the question of the propriety of the decision to suspend and revoke plaintiff's daycare license and issue a finding of child abuse; (2) common causes of action in that the same evidence would be presented, the actions arise out of the same "nucleus of facts[,]" and reversal of the State decisions would impair or destroy the rights or interests established in the State action, *Rains v. State*, 100 Wash. 2d 660, 665, 674 P.2d 165 (1983); and (3) both common persons and parties and quality of persons for or against whom the claim is made given that the State case was brought by the State of Washington, through its agencies DSHS and DEL, against plaintiff, while plaintiff here pursues claims against Washington, its agencies, and its employees, *see id.* at 664-65 (noting that the parties "although somewhat differently named on the complaints, were 'qualitatively' the same[,]" and that a suit against State officials was "in effect a suit against the State.")  They maintain, therefore, that res judicata precludes plaintiff from attempting to overturn the child abuse finding or seeking to reinstate her daycare license, as well as pursuing claims that could have been decided by Washington State courts, including the proper standard to apply[7] and constitutional claims that could have been pursued in State court.

Defendants also argue preclusion of issues through collateral estoppel.  "'Under collateral estoppel, once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action

---

7 As observed by defendants, subsequent to the issuance of the DSHS Board of Appeals' decisions, the Washington Supreme Court ruled that the preponderance of the evidence standard – as applied in this case – is the constitutionally appropriate standard employed in daycare licensing revocation cases.  *Hardee*, 172 Wash. 2d at 6-19.

ORDER RE: PENDING MOTIONS
FOR SUMMARY JUDGMENT
PAGE -20

involving a party to the first case.'"  *Hydranautics v. FilmTec Corp.*, 204 F.3d 880, 885 (9th

Cir. 2000) (quoting *Dodd v. Hood River County*, 59 F.3d 852, 863 (9th Cir. 1995)).   In

Washington, the collateral estoppel elements include: (1) identical issues; (2) a final judgment

on the merits; (3) the party against whom collateral estoppel is asserted is the same party or in

privity with a party to the prior adjudication; and (4) application of the doctrine must not work

an injustice on the party against whom it is to be applied.  *Shoemaker*, 109 Wn.2d at 507 (cited

sources omitted).

Defendants aver that plaintiff seeks to relitigate many issues already decided by the

administrative bodies below.   They argue that, to the extent plaintiff is attempting to relitigate

any of the findings of fact in the DEL and DSHS decisions, the issues would be identical.

Defendants aver a final judgment on the merits given the resolution of many substantive issues,

and note that plaintiff is the same party in both proceedings.   Defendants deny collateral

estoppel would work an injustice given that plaintiff was afforded access to a full and fair

proceeding below.   Defendants, in sum, argue plaintiff is precluded from disputing the facts

decided by the administrative tribunal below.

Plaintiff does not dispute the concurrence of all elements necessary to establish both

claim and issue preclusion generally to this matter.   The Court finds plaintiff's failure to

oppose defendants' arguments to be an admission that the arguments have merit.  *See* Local

Civil Rule 7(b)(2).   The Court further finds the elements to be satisfied as explained in the

delineation of defendants' arguments set forth above.   Plaintiff is, accordingly, precluded from

relitigating claims decided and claims that could have been decided below, and collaterally

01   estopped from disputing facts decided by the DSHS Board of Appeals. However, due to the

02   lack of clarity in plaintiff's assertion of her claims, and to some extent the explanation of the

03   arguments in the briefing, the precise application of preclusion is difficult. Accordingly, the

04   Court assesses below the merits of plaintiff's claims against the individual defendants as set

05   forth in the pending dispositive motions.[8]

06   C.     Absolute Immunity

07       State officials are entitled to absolute immunity for their performance of

08   quasi-prosecutorial and quasi-judicial functions. *Tamas v. DSHS*, 630 F.3d 833, 841-42 (9th

09   Cir. 2010). Pursuant to Ninth Circuit law, a state official's decision to institute license

10   revocation proceedings is a function entitled to the protection of absolute immunity.

11   *Costanich v. Dep't of Soc. & Health Servs.*, 627 F.3d 1101, 1108-09 (9th Cir. 2010)

12   (Washington DSHS social worker and other officials absolutely immune for institution of

13   license revocation proceedings). *Accord Hannum v. Friedt*, 88 Wn. App. 881, 888-89, 947

14   P.2d 760 (1997) (absolute prosecutorial immunity applied to investigator and director of

15   Washington State Department of Licensing for initiation of summary suspension of dealer

16   license and for testifying at administrative hearing). Accordingly, as argued by defendants, to

17   the extent any of plaintiff's claims are based on the institution of the summary suspension and

18   licensing revocation proceedings, defendants Thebo and Roalkvam are entitled to absolute

19 _____

20       8 Plaintiff makes generalized reference to constitutional provisions in her amended complaint, such as the Equal Protection Clause and the Seventh Amendment, without explaining the basis for

21   claims based on those provisions and without addressing any such claims in the summary judgment briefing. Any such claims are wholly conclusory, do not withstand dismissal on summary judgment, and are not otherwise addressed within this Order.

22

01 immunity.[9]

02 D.    Qualified Immunity and Plaintiff's Remaining Claims

03    Plaintiff alleges in her amended complaint that Munoz, Thebo and Roalkvam violated

04 her property interest in her childcare license and her liberty interest in her right to work in her

05 chosen profession as a licensed child care provider, and in relation to her name and reputation.

06 (Dkt. 36 at 8-9.)  She also alleges Thebo violated her constitutional right to free speech.  (*Id.*

07 at 11.)   In moving for partial summary judgment, plaintiff appears to allege a Fourth

08 Amendment violation through Thebo's entry into her daycare without a warrant or probable

09 cause, and Fourteenth Amendment violations through the denial of substantive and procedural

10 due process in the suspension of her child care license.   (Dkt. 46.)[10]   She also avers her right to

11 additional substantive and procedural safeguards due to the seriousness of the child abuse

12 allegation, and alleges violations of her rights under the Washington Constitution.   (*Id.*)

13    Defendants assert the individually named defendants' entitlement to qualified immunity

14

15    9 Defendants do not argue the application of absolute immunity to the *investigation* conducted by Thebo.  Instead, they argue absolute immunity applies to the decision to *institute* licensing

16 proceedings.  All of the case law discussed above supports this distinction.  *See Tamas*, 630 F.3d at 841-42 (absolute immunity extends to officials performing quasi-prosecutorial and quasi-judicial

17 functions, but not to investigatory conduct; finding the decision to license an individual as a foster parent and to not remove children from that individual's care to be "traditional investigation and placement

18 responsibilities" not entitled to absolute immunity); *Costanich*, 627 F.3d at 1108-09 (absolute immunity applied to institution of license revocation proceeding, but not to investigation and filing of declaration

19 in support of termination proceedings); *Hannum*, 88 Wn. App. at 889-90 (absolute immunity applied to initiation of summary suspension and license revocation proceedings, but trial court failed to cite proper

20 ground for dismissal in deeming investigatory functions performed by social worker protected by absolute immunity).

21    10  As observed by defendants and as demonstrated in the discussion below, while plaintiff also maintains the seizure of her license violated her rights under the Fourth Amendment, this claim is

22 properly considered in relation to the Fourteenth Amendment.

ORDER RE: PENDING MOTIONS
FOR SUMMARY JUDGMENT
PAGE -23

01    based on the absence of any support for the conclusion that their conduct violated a clearly

02    established constitutional right. *Saucier v. Katz*, 533 U.S. 194, 200-02 (2001). As argued by

03    defendants, the Court finds an absence of material factual disputes and defendants' entitlement

04    to a judgment as a matter of law in relation to all of plaintiff's claims against the individual

05    defendants. *See id*. at 201 ("If no constitutional right would have been violated were the

06    allegations established, there is no necessity for further inquiries concerning qualified

07    immunity.")

08         1.   <u>Fourth Amendment</u>:

09         The Fourth Amendment provides for "[t]he right of the people to be secure in their

10    persons, homes, papers, and effects, against unreasonable searches and seizures[.]" U.S.

11    Const. amend. IV. The Fourth Amendment is triggered where a search or seizure occurs in an

12    area where an individual has a "constitutionally protected reasonable expectation of privacy."

13    *Friedman v. Boucher*, 580 F.3d 847, 861 (9th Cir. 2009) (internal quotation marks and quoted

14    sources omitted). *Accord New York v. Burger*, 482 U.S. 691, 699-700 (1987); *Katz v. United*

15    *States*, 389 U.S. 347, 360 (1967) (Harlan, J., concurring). The expectation attaches to

16    administrative inspections pursuant to a regulatory scheme, as well as to commercial premises,

17    albeit in a more attenuated form that that applied to an individual's home. *Burger*, 482 U.S. at

18    699-700.

19         Consent is well-established as a recognized exception to the Fourth Amendment's

20    protection against unreasonable searches and seizures. *United States v. Russell*, 664 F.3d

21    1279, 1281 (9th Cir. 2012) (citing *Katz*, 389 U.S. at 358 n.22 ("A search to which an individual

22

01 consents meets Fourth Amendment requirements.")).  The government bears the burden of

02 showing consent was given freely and voluntarily.  *Id.* (cited source omitted).

03       Plaintiff alleges a Fourth Amendment violation based on Thebo's entry into her daycare

04 without probable cause and without a warrant.  However, plaintiff does not dispute and the

05 evidence in this matter establishes that plaintiff consented to Thebo's entry into her home.

06 (Dkt. 44, ¶9 and Dkt. 42-5 at 11, 14-15.)  Plaintiff also consented to Thebo's review of her

07 records and admitted she did not observe Thebo seize anything from her home or notice

08 anything missing after Thebo left.  (Dkt. 42-5 at 11.)  Given the undisputed fact of plaintiff's

09 consent, as well as the absence of any allegation Thebo seized plaintiff's property during her

10 April 2008 visit to plaintiff's home, plaintiff fails to make a showing on an essential element of

11 her Fourth Amendment claim.  Defendants are, accordingly, entitled to dismissal of plaintiff's

12 Fourth Amendment claim on summary judgment.

13       2.   <u>Procedural Due Process</u>:

14       The Fourteenth Amendment protects against governmental deprivations of "life, liberty,

15 or property" without due process of law.  U.S. Const. amend. XIV.  A procedural due process

16 claim has two elements:  (1) the deprivation of a constitutionally protected liberty or property

17 interest; and (2) the denial of adequate procedural protection.  *Brewster v. Bd. of Educ. of the*

18 *Lynwood Unified Sch. Dist.*, 149 F.3d 971, 982 (9th Cir. 1998).

19       Plaintiff avers a property interest in her childcare license and a liberty interest in both

20 her right to work in her chosen profession and in relation to her name and reputation.  She

21 takes issue with the content of the April 14, 2008 summary suspension notice, referring to an

22

01   allegation "that a child sustained an unexplained injury while in [her] care and that [she]

02   attempted to convince the parent not to report the injury to the licensor." (Dkt. 44, Ex. A;

03   *accord id*., Ex. D.) Plaintiff maintains the notice left her to guess at the factual basis for the

04   allegations and thereby deprived her of adequate notice and the opportunity to make a

05   meaningful response.

06       Defendants concede for the purposes of their motion that plaintiff has a property interest

07   in her childcare license, *see Costanich*, 627 F.3d at 1110 (assuming without deciding that a

08   foster parent had a protected property and/or liberty interest in foster care license), and do not

09   address whether plaintiff has a liberty interest in pursuing her profession or in relation to her

10   name and reputation. The Court concludes that it need not resolve the issue of plaintiff's

11   property and/or liberty interests. That is, even assuming the existence of such interests, the

12   Court finds an absence of any showing plaintiff was deprived constitutionally adequate process.

13       "The fundamental requirement of due process is the opportunity to be heard 'at a

14   meaningful time and in a meaningful manner.'" *Mathews v. Eldridge*, 424 U.S. 319, 333

15   (1976) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). Because the opportunity to

16   be heard requires knowledge a matter is pending, "[a]n elementary and fundamental

17   requirement of due process in any proceeding which is to be accorded finality is notice

18   reasonably calculated, under all the circumstances, to apprise interested parties of the pendency

19   of the action and afford them an opportunity to present their objections." *Mullane v. Central

20   Hanover Bank & Trust Co*., 339 U.S. 306, 314 (1950).

21       In this case, the summary suspension letter informed plaintiff a DLR/CPS investigation

22

01 had been activated based on alleged negligent treatment/maltreatment or physical abuse of a

02 child in plaintiff's care, described the allegations as involving an unexplained injury to a child

03 in plaintiff's care and an attempt to convince the parent to not report the injury, provided the

04 referral number for the investigation, and stated that "emergency" and "immediate" action was

05 found "necessary" and "imperative" pursuant to RCW § 43.215.305(b)(2), given a finding that

06 plaintiff's daycare "constitutes a threat to the public health, safety, and welfare[.]" (Dkt. 44,

07 Exs. A & D (citing and quoting RCW § 43.215.305; also citing WAC 170-296-0450).) The

08 letter also informed plaintiff of the steps she must take to contest and/or stay the suspension,

09 and advised her to contact Thebo if she had any questions regarding the decision. (*Id*. (citing

10 RCW § 43.215.305(4)(b)).)

11 The summary suspension letter sufficiently informed plaintiff as to the pendency of the

12 action and afforded her the opportunity to respond. *See*, *e.g.*, *Greenwood v. FAA*, 28 F.3d 971,

13 975 (9th Cir. 1994) (due process satisfied where notice and opportunity to discuss suspension of

14 pilot examiner designation was provided promptly after suspension). Indeed, plaintiff did

15 promptly respond, beginning with her timely request for a stay of the suspension, followed

16 shortly thereafter by her participation in the May 2008 hearing. (*See* Dkt. 42, Exs. A & B; *see*

17 *also* Dkt. 25-1 at 24.)

18 Contrary to plaintiff's assertion, the decision in *Gete v. INS*, 121 F.3d 1285, 1289-90

19 (9th Cir. 2007), does not support the insufficiency of the notice. In that case, the Ninth Circuit

20 found form letters issued for INS forfeiture proceedings insufficient where they stated only that

21 property had been seized and provided copies of the relevant act and INS regulations without

22

01    identification of the specific statutory provision alleged to have been violated.   Here, unlike in

02    *Gete*, the summary suspension letter did provide a factual explanation for the decision and cited

03    the relevant code provisions.   Moreover, other evidence in the record contradicts plaintiff's

04    argument that the summary suspension letter left her guessing as to the factual basis for the

05    allegations against her.   For instance, plaintiff demonstrated her apparent knowledge as to the

06    factual basis for the allegations when, on the same date she received the summary suspension

07    letter, she was observed backdating an injury report regarding P to the date of the April 10, 2008

08    incident.   (Dkt. 44, ¶10 and Ex. C; Dkt. 25-1 at 24.)

09        Nor does plaintiff set forth any other basis for a procedural due process violation.

10    Plaintiff avers that the "[t]he simple fact that a CPS/DLR investigation is active is not enough to

11    summarily suspend a child care license."   (Dkt. 46 at 11.)   However, as stated in the

12    suspension letter, Washington law provides for summary suspension of a childcare license

13    "when necessary to protect the public health, safety, or welfare."   RCW § 43.215.305(2)(b).

14    In fact, the Washington Court of Appeals recently recognized the authority afforded DEL by

15    RCW 43.215.305(2)(b) to take immediate action in an emergency.   *Islam v. Dep't of Early*

16    *Learning*, 157 Wn. App. 600, 615-16, 238 P.3d 74 (2010).   The Court noted that "[i]n a

17    situation that requires immediate action, the requirement of 'proof' does not preclude the

18    department from acting upon information that has not yet been tested in a hearing[,]" and

19    upheld the summary suspension of a daycare license where there was an active DLR/CPS

20    investigation and "reliable information" a child was injured.   *Id.*

21        Plaintiff cites to RCW § 26.44.010 as only justifying "emergency intervention based

22

01 upon verified information[,]" but that provision addresses parents, custodians, or guardians of

02 children, not childcare providers. Also, the fact that WAC 170-296-0450 requires DEL to

03 deny, suspend, or revoke a license based on a finding of child abuse does not negate the

04 statutory provision allowing for the immediate suspension of a license based on a finding that

05 the suspension is necessary to protect public health, safety, or welfare. The Court additionally

06 notes that, in focusing on the factual explanation as to the existence of a child abuse allegation,

07 plaintiff ignores that the summary suspension letter also pointed to the allegation that plaintiff

08 had "attempted to convince the parent not to report the injury to the licensor." (Dkt. 44, Exs. A

09 & D.)

10 Finally, plaintiff fails to establish that the absence of a pre-deprivation hearing violated

11 her right to due process. Procedural due process does not in all circumstances require the

12 provision of notice and an opportunity to be heard prior to deprivation of property.

13 *Buckingham v. Sec'y of the USDA*, 603 F.3d 1073, 1082 (9th Cir. 2010) (citing *Parratt v.*

14 *Taylor*, 451 U.S. 527, 540 (1981), *overruled in part on other grounds by Daniels v. Williams*,

15 474 U.S. 327 (1986)). "It can take place through a combination of pre- and post-deprivation

16 procedures . . . or be satisfied with post-deprivation process alone[.]" *Id*. (citing *Cleveland Bd.*

17 *of Educ. v. Loudermill*, 470 U.S. 532, 547-48 (1985) and *Brewster*, 149 F.3d at 984). "It is

18 well-settled that protection of the public interest can justify an immediate seizure of property

19 without a prior hearing." *Soranno's Gasco, Inc. v. Morgan*, 874 F.2d 1310, 1317 (9th Cir.

20 1986). Additionally, a due process analysis does not involve "second-guess[ing]" state

21 legislative determinations, and "the relevant inquiry is not whether a suspension should have

22

01 been issued in [a] particular case, but whether the statutory procedure itself is incapable of

02 affording due process." *Id*.

03       Washington State, in regulating childcare licensing, recognizes the "paramount"

04 interest in "protecting children from the threat of physical and sexual abuse[,]" and that "'[t]o

05 safeguard and promote the health, safety, and well-being of children receiving child care and

06 early learning assistance … is paramount over the right of any person to provide care.'"

07 *Hardee*, 172 Wn.2d at 12 (quoting RCW 43.215.005(4)(c)).   Further, in addition to providing

08 for the summary suspension of a license when necessary to protect public health, safety, or

09 welfare, RCW § 43.215.305(2)(b), Washington provides for both a procedure for obtaining a

10 stay of a summary suspension and a post-deprivation hearing process.   As previously found by

11 this Court, these procedures provided plaintiff "with any due process required by law."   *Brown*

12 *v. Dunbar*, C07-82Z, 2008 U.S. Dist. LEXIS 116278 at *11-13 (W.D. Wash. 2008) (dismissing

13 daycare provider's § 1983 due process claim).[11]

14 _____

15       11 Responding to defendants' reliance on *Joshua v. Newell*, 871 F.2d 884, 886-87 (9th Cir.
1989), for the proposition that Washington law provides an adequate post-deprivation remedy such that
16 a suspension or revocation of a child care license prior to a hearing does not violate due process, plaintiff
alleges the inadequacy of the post-deprivation process given her inability to pursue a cause of action for
17 negligent investigation of child abuse because she is not a parent, custodian, guardian, or child, *see*
*Ducote v. Dep't of Soc. & Health Servs*., 167 Wn.2d 697, 706-07, 222 P.3d 785 (2009).   As plaintiff
does not set forth a violation of established state procedures governing notification, the case law relevant
18 to these arguments is not directly on point.   *See, e.g., Joshua*, 871 F.2d at 886-87 (alleged deprivation
resulted from failure to notify individual of hearing rights, thus implicating *Parratt's* recognition that
19 "where an alleged deprivation results from 'the unauthorized failure of agents of the State to follow
established state procedure,' and where no predeprivation hearing is practicable, we should examine
whether the state provides an adequate post-deprivation remedy.") (quoting *Parratt*, 451 U.S. at 543);
20 *Soranno's Gasco, Inc.*, 874 F.2d at 1317 ("*Parratt* is limited to situations 'in which the state
administrative machinery did not and could not have learned of the deprivation until after it had
21 occurred.'") (quoting *Piatt v. MacDougall*, 773 F.2d 1032, 1036 (9th Cir. 1985)).   Moreover, plaintiff
does not set forth a basis for negligent investigation or demonstrate that state law would not otherwise
22 allow for full compensation of her alleged property loss.   *See generally Brown*, 2008 U.S. Dist. LEXIS

ORDER RE: PENDING MOTIONS
FOR SUMMARY JUDGMENT
PAGE -30

01        In sum, plaintiff fails to support a contention that she was denied notice and a

02 meaningful opportunity to respond to the summary suspension. Nor does plaintiff set forth

03 any basis for a procedural due process claim in relation to the ultimate revocation of her license

04 or the founded child abuse finding. *See generally Costanich*, 627 F.3d at 1117 (upholding

05 denial of procedural due process claims where plaintiff "benefited from multiple layers of

06 administrative and state court review and, therefore, cannot allege that she is a victim of 'lack of

07 process.'") The Court, therefore, finds defendants entitled to dismissal of plaintiff's

08 procedural due process claim on summary judgment.[12]

09        3.    <u>Substantive Due Process</u>:

10        A substantive due process claim is grounded in an individual's right to be free from

11 arbitrary action of the government. *Sacramento v. Lewis*, 523 U.S. 833, 845 (1998).

12 However, "only the most egregious official conduct can be said to be "'arbitrary in the

13 constitutional sense[.]'" *Id.* at 846 (quoting *Collins v. Harker Heights*, 503 U.S. 115, 129

14 (1992)). To amount to a substantive due process violation, the harmful conduct alleged must

15 "'shock[] the conscience' or 'offend the community's sense of fair play and decency.'"

16 *Rosenbaum v. Washoe County*, 663 F.3d 1071, 1079 (9th Cir. 2011) (quoting *Rochin v.*

17 *California*, 342 U.S. 165, 172-73 (1952)).

18 116278 at *11 ("To satisfy due process, the State remedy need not provide a plaintiff with all the relief
available under 42 U.S.C. § 1983 as long as it would fully compensate his or her property loss.")

19

20    12 Plaintiff states in a heading in her motion that her due process rights were violated through
defendants' failure to "provide timely information about allegations that [P's] parents had previously

21 abused their child." (Dkt. 46 at 8.) Yet, this allegation is no more than conclusory, unaccompanied by
any discussion whatsoever. Also, while plaintiff sets forth "supplemental facts" regarding this
allegation in her reply (*see* Dkt. 54 at 2), she again provides no argument in support. The Court finds no

22 basis for concluding that plaintiff is entitled to summary judgment in relation to this allegation.

01    Plaintiff, again, appears to base her substantive due process claim in relation to the

02    summary suspension. (*See* Dkt. 46.) The evidence establishes that defendants summarily

03    suspending plaintiff's license based on an active DLR/CPS investigation, prompted by two

04    referrals (including one from an examining physician), and an allegation that plaintiff had

05    attempted to persuade the child's parents not to make a report regarding the injury in question.

06    (*See* Dkt. 43, Ex. A and Ex. C at 2.) Plaintiff fails to offer any evidence suggesting defendants'

07    conduct was unreasonable, let alone that such conduct would shock the conscience of a

08    reasonable trier of fact. *See*, *e.g.*, *Islam*, 157 Wn. App. at 615-16 (upholding summary

09    suspension of daycare license where there was an active DLR/CPS investigation and "reliable

10    information" a child was injured). *Cf. Croft v. Westmoreland County Children & Youth Servs.*,

11    103 F.3d 1123, 1124-27 (3d Cir. 1997) (finding social worker's threat to remove a child from

12    her home unless the father immediately moved out arbitrary where it was based solely on a

13    six-fold hearsay, anonymous, and uncorroborated telephone report and the social worker had no

14    reasonable basis to believe abuse had occurred).

15    Moreover, to the extent plaintiff maintains a substantive due process claim extending

16    beyond the summary suspension, she fails to set forth facts demonstrating conduct that could

17    reasonably be construed as shocking the conscience. Any such allegations are no more than

18    conclusory and insufficient to withstand summary judgment. The Court, accordingly, also

19    finds defendants entitled to dismissal of plaintiff's substantive due process claim.

20         4.    First Amendment:

21    Plaintiff alleges Thebo violated her constitutional right to free speech. Defendants

22

01 construe this claim as alleging retaliation through the revocation of plaintiff's license in

02 response to plaintiff telling her other daycare customers about the child abuse allegation and for

03 contesting the summary suspension of her license.   While acknowledging plaintiff's first

04 amendment right to free speech and to petition the government for redress of a grievance,

05 defendants aver an absence of any indication in the record that plaintiff's exercise of her First

06 Amendment rights was a substantial or motivating factor in the defendants' decision, as is

07 required to support a First Amendment retaliation claim.   *CarePartners LLC v. Lashway*, 545

08 F.3d 867, 876-77 (9th Cir. 2008).   Defendants point to the abundance of evidence in the record

09 supporting the license revocation decision, including the detailed reasoning recounted in the

10 August 2008 and June 2009 revocation letters, and the fact that DEL was required to revoke the

11 license following the child abuse finding.   (Dkt. 44, Ex. A and Dkt. 45, Ex. B (reasoning

12 recounted *supra* at 5-7); Wash. Admin. Code § 170-296-0450(2)(b) ("We must deny, suspend

13 or revoke your license if you: . . . Have been found to have committed . . . child abuse, child

14 neglect or exploitation[.]"))

15        Plaintiff failed to provide any response to defendants' argument and this failure to reply

16 is taken as a concession that defendants' argument has merit.   *See* Local Civil Rule 7(d)(2).

17 The Court further agrees with defendants as to an absence of any evidence in the record

18 supporting a conclusion that plaintiff's exercise of her right to free speech was a substantial or

19 motivating factor in the decision to revoke plaintiff's daycare license.   Accordingly,

20 defendants establish their entitlement to dismissal of plaintiff's First Amendment claim on

21

22

01  summary judgment.[13]

02      5.  Additional Safeguards:

03      Plaintiff maintains her entitlement to additional safeguards of her rights because of the

04  seriousness of the allegation of child abuse.   She notes, as a result of the founded child abuse

05  finding, her inability to continue in her chosen profession or complete her education as a

06  nursing assistant because the clinical courses require contact with vulnerable adults.   Plaintiff

07  likens the allegation against her to a criminal allegation of child abuse, notes she was denied the

08  rights normally afforded citizens accused of crimes, and posits that, had she been criminally

09  charged with simple assault, she would have faced lesser punishment of only a three year ban

10  on working with vulnerable adults, *see* RCW § 43.43.842(1)(2), or a five year ban on working

11  with children, WAC § 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.   However, as argued by defendants, plaintiff's arguments

12  lack merit.[14]

13  _____

14      13 Plaintiff stated in her amended complaint that, after serving the summary suspension, Thebo
    "commanded [plaintiff] and her mother not to give their opinions on why the Family Child Care Home
    license was suspended or why the parents could not bring their children back."  (Dkt. 36 at 6.)
    However, plaintiff did not, either in responding to defendants' motion or in filing her own motion,
    clarify that this assertion served as the foundation for her First Amendment claim, or provide any factual
    support for her position as required by Rule 56(c).   The Court, therefore, declines to find any basis for
    denying defendants summary judgment based on the conclusory allegation contained within plaintiff's
    amended complaint.

18      14 The Court assumes plaintiff can and does bring this claim against Munez, the lone individual
    DLR/CPS defendant.   The Court also notes that, in addition to the fact that plaintiff's attempt to
    challenge the standard applied in the administrative proceedings is barred both by the Eleventh
    Amendment and the preclusive effect of the unappealed state decisions, the case law she relies on does
    not support her assertion as to a higher standard of review in relation to civil child abuse allegations.
    *See Hardee*, 172 Wn.2d at 12-18 (overruling decision which would compel the requirement of a
    quasicriminal standard of proof before revoking a child care license based on children's exposure to
    harm where such requirement would be "potentially very harmful" and "not constitutionally
    mandated."; distinguishing case calling for application of "clear and convincing" standard of proof to
    disciplinary proceedings against physicians, given physicians' "unique education, investment, and

ORDER RE: PENDING MOTIONS
FOR SUMMARY JUDGMENT
PAGE -34

01      The question of whether a penalty is civil or criminal in nature is a matter of statutory

02 construction. *United States v. Ward*, 448 U.S. 242, 248 (1980) (cited sources omitted). The

03 Court looks, first, to whether the legislature intended for a penalty to be civil or criminal, and,

04 second, to whether the penalty is "so punitive either in purpose or effect as to negate that

05 intention." *Id*. at 248-49 (cited source omitted).

06      This matter involved a founded child abuse finding pursuant to RCW 26.44, a title

07 addressing "Domestic Relations" and intended to make protective services available to children

08 "in an effort to prevent further abuses, and to safeguard the general welfare of such children[.]"

09 RCW § 26.44.010. Abuse of a child under Title 26 includes, *inter alia*, "injury of a child by

10 any person under circumstances which cause harm to the child's health, welfare, or safety,"

11 RCW § 26.44.020(1), and proscribes as a penalty that founded abuse findings "may be

12 considered in determining" whether (1) a person can be licensed to care for children or

13 vulnerable adults; (2) a person is qualified to be employed by a child care agency or facility; and

14 (3) a person may be authorized or funded by DSHS to provide care or services to children or

15 vulnerable adults, WAC § 388-15-073(3).

16      In contrast, the Washington Criminal Code is intended "[t]o forbid and prevent conduct

17 that inflicts or threatens substantial harm to individual or public interests[.]" RCW §

18 9A.04.020(1)(a). The criminal code includes penalties for crimes against children that entail

19 imprisonment and substantial fines, *see*, *e.g.*, RCW § 9A.36.140 (assault of a child in the third

20

---

21 personal attachment" property interest) (discussing *Ongom v. Department of Health*, 159 Wn.2d 132, 148 P.3d 1029 (2006) and *Bang D. Nguyen v. Dep't of Health*, 144 Wn.2d 516, 29 P.3d 689 (2001)

22 respectively)).

01 degree as defined in RCW § 9A.36.031(f) (with criminal negligence, causing "bodily harm

02 accompanied by substantial pain that extends for a period sufficient to cause considerable

03 suffering")) and RCW § 9A.20.021(c) (maximum penalty for class C felonies is five years

04 imprisonment and/or $10,000 fine), and permanent disqualification for a person to be "licensed,

05 contracted, or authorized to have unsupervised access to children or to individuals with

06 developmental disability[.]"  WAC § 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 (applying to, *inter alia*, child abuse/neglect

07 and "[a] crime against a child").

08      As argued by defendants, a comparison of the civil and criminal code supports the

09 conclusion that the legislature intended the penalty for an administrative finding of child abuse

10 to be civil in nature.  *See*, *e.g.*, *Ward*, 372 U.S. at 249 (noting that the sanction at issue was

11 labeled as "a 'civil penalty'" and separated from criminal penalties subsequently set forth).

12 Also, given that a criminal charge in this case would have taken into consideration that the

13 victim was a child, plaintiff misdirects her focus on the crime of simple assault.

14      Neither does plaintiff succeed in supporting the position that the penalty at issue here is

15 so punitive as to negate the intention of a civil penalty.  With this inquiry, "'only the clearest

16 proof could suffice to establish the unconstitutionality of a statute on such a ground.'"  *Ward*,

17 372 U.S. at 249 (quoting *Flemming v. Nestor*, 363 U.S. 603, 617 (1960)).  A variety of factors

18 may be relevant to this analysis, such as:

19      [w]hether the sanction involves an affirmative disability or restraint, whether it
        has historically been regarded as a punishment, whether it comes into play only

20      on a finding of scienter, whether its operation will promote the traditional aims
        of punishment – retribution and deterrence, whether the behavior to which it

21      applies is already a crime, whether an alternative purpose to which it may
        rationally be connected is assignable for it, and whether it appears excessive in

22

01        relation to the alternative purpose assigned[.]

*Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 168-69 (1963) (footnotes and cited sources omitted).

Consideration of a number of the relevant factors demonstrates the absence of the clear proof necessary to support plaintiff's argument. Plaintiff's inability to be licensed or paid in Washington State to care for vulnerable populations does not set forth an affirmative disability or restraint, nor has restriction from working in a particular field been historically regarded as punishment. *Hudson v. United States*, 522 U.S. 93, 104 (1997) ("[N]either money penalties nor [occupational] debarment have historically been viewed as punishment. We have long recognized that 'revocation of a privilege voluntarily granted,' such as a debarment, 'is characteristically free of the punitive criminal element.'"; "While petitioners have been prohibited from further participating in the banking industry, this is 'certainly nothing approaching the "infamous punishment" of imprisonment.'") (quoting *Helvering v. Mitchell*, 303 U.S. 391, 399 & n.2 (1938) and *Flemming v. Nestor*, 363 U.S. 603, 617 (1960) respectively).[15] *See also Rivera v. Pugh*, 194 F.3d 1064, 1068-69 (9th Cir. 1999) (revocation of driver's license does not involve affirmative disability or restraint given that the loss of the license is "the loss of a privilege, rather than a punishment."; "It is immaterial that the inability to drive may severely impact some individuals who must drive, for example, to work. . . . The

---

15  Plaintiff cites to case law recognizing the pursuit of an occupation or profession as a liberty interest protected by the due process clause. *See, e.g., Dittman v. California*, 191 F.3d 1020, 1029 (9th Cir. 1999) ("'[I]t is well-recognized that the pursuit of an occupation or profession is a protected liberty interest that extends across a broad range of lawful occupations.'") (quoted source omitted). However, in addition to the fact that plaintiff does not support a due process violation, the question of whether an individual may be entitled to due process in relation to the deprivation of protected interest is a separate and distinct inquiry from that discussed above.

01 statute is to be evaluated on its face, and 'whether a sanction constitutes punishment is not

02 determined from the defendant's perspective.'") (cited and quoted sources omitted).   Also, a

03 founded child abuse finding does not require a finding of scienter.   *See* RCW § 26.44.020(1)

04 (defining abuse or neglect and citing RCW § 9A.16.100 (discussing reasonable and moderate

05 force, but not intention)).   Finally, neither the mere fact that child abuse is also a crime, nor that

06 the penalty articulated for an administrative finding may also be a deterrent to child abuse

07 renders the sanction criminally punitive.   *Hudson*, 522 U.S. at 105.

08          In sum, plaintiff fails to establish her entitlement to additional safeguards of her rights

09 based on the seriousness of the allegation of child abuse.   This argument, therefore, provides

10 no basis for plaintiff's motion for partial summary judgment.

11          6.          <u>Washington Constitution</u>:

12          Again asserting that child abuse under RCW § 26.44.020 is a crime, plaintiff avers her

13 right to a jury trial under the Washington Constitution.   *See* Wash. Const. art. 1, §§ 21 and 22.

14 However, as stated above, an administrative finding of child abuse under Title 26.44 does not

15 constitute a crime and, therefore, does not entitle plaintiff to a trial by jury.   Plaintiff also avers

16 Thebo and Roalkvam violated her state constitutional right to privacy by entering her home and

17 revoking her license without obtaining a warrant based on probable cause.   *See* Wash. Const.

18 art. 1, § 7.   Yet, as noted by defendants, the provision of the Washington Constitution relied

19 upon by plaintiff in support of this claim does not provide a private right of action.   *Reid v.*

20 *Pierce County*, 136 Wn.2d 195, 213-14, 961 P.2d 333 (1998).   Plaintiff, accordingly, sets forth

21 no basis for summary judgment in relation to the Washington Constitution.

22

<u>CONCLUSION</u>

In sum, the Court finds an absence of a dispute as to any material fact and defendants entitled to a judgment as a matter of law. The Court DENIES plaintiff's motion for partial summary judgment (Dkt. 46) and GRANTS defendants' motion for summary judgment (Dkt. 41). This matter is hereby DISMISSED with prejudice.

DATED this <u>26th</u> day of March, 2012.

Mary Alice Theiler
United States Magistrate Judge

ORDER RE: PENDING MOTIONS
FOR SUMMARY JUDGMENT
PAGE -39